Otto P. FULS and Elva Fuls, his wife, Plaintiffs,

v.

SHASTINA PROPERTIES, INC., a California Corporation, Beverly Enterprises, a California Corporation, Shastina Realty, Inc., a California Corporation, Golden West Associates, Inc., a California Corporation, Diversified Mortgage Investors, a Business Trust, Continental Mortgage Investors, a Massachusetts Business Trust, Continental Investment Corporation, a Massachusetts Corporation, Diversified Advisers, Inc., a Florida Corporation, Mortgage Consultants, Inc., a Florida Corporation, Mountain Home Properties, Ray West, T. J. Bettes Company of New England, Inc., Ten Weed Corp., a California Corporation and Mount Shasta Title and Escrow Company, a substituted trustee, Defendants.

No. C–77–1000–CBR.

United States District Court, N. D. California.

Feb. 17, 1978.

William K. Wilburn, San Jose, Cal., for plaintiffs.

John E. Carne, Crosby, Heafey, Roach & May, Oakland, Cal., for defendants Shastina Properties, Inc. and Shastina Realty, Inc.

Morton G. Rosen, Fulop, Rolston, Burns & McKittrich, Beverly Hills, Cal., for defendant Diversified Mortgage Investors.

Stephen P. Harbison, Argue, Freston & Myers, Los Angeles, Cal., for defendants Beverly Enterprises and Golden West Associates, Inc.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This action arises out of plaintiffs' purchase of three parcels of real property in a recreational subdivision known as "Lake Shastina." Plaintiffs have alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 thereunder, violations of the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1703(a)(2), violations of the California subdivision laws, common law fraud, and breach of trust.

The matter is presently before the Court on the motions of defendants Shastina Properties, Inc. ("Shastina Properties"), Shastina Realty, Inc. ("Shastina Realty"), Beverly Enterprises ("Beverly"), Golden

West Associates, Inc. ("Golden West"), and Diversified Mortgage Investors ("DMI") to dismiss or for summary judgment.[1]

## I. FACTUAL BACKGROUND

It appears from the complaint that on December 20, 1972, plaintiffs purchased three lots from certain defendants in a recreational subdivision known as "Lake Shastina." Shastina Properties is alleged to have been the developer and seller of lots in Lake Shastina. Shastina Realty and Golden West are alleged to have the exclusive sales agents for Lake Shastina lots. Beverly is alleged to have dominated, controlled, and been the alter ego of Shastina Properties, Shastina Realty, and Golden West. DMI is alleged to have been one of the primary financiers of Lake Shastina, and to have dominated and controlled Shastina Properties through its loan agreements with the latter.

The lots were purchased by plaintiffs as part of a joint venture with defendant Ray West, a former salesman for Shastina Properties. Under the joint venture agreement, plaintiffs were required to make an initial down payment and monthly payments. After plaintiffs had paid $15,000 on the lots, West was required to make all remaining monthly payments. Plaintiffs performed their obligations and have paid $15,000 for the lots. West has not made the remaining monthly payments. Notices of default on the lots were recorded by holders of the deeds of trust on February 15, 1977, and on February 17, 1977.

Plaintiffs allege that they purchased the lots on the basis of defendants' fraudulent representations that the lots were in short and rapidly diminishing supply, that the demand for such lots was great and urgent, and that an investment in the lots would appreciate rapidly and substantially under pressure of the diminishing supply and increasing demand. These and other allegedly fraudulent representations are the basis

of plaintiffs' claims. Plaintiffs seek compensatory damages, rescission, exemplary damages, and declaratory and injunctive relief.

## II. DISCUSSION

### A. Statutes of Limitations

Defendants have moved to dismiss Counts One, Two, and Three for failure to state a claim upon which relief can be granted, asserting that plaintiffs' claims therein are barred by applicable statutes of limitations.[2] For purposes of a motion to dismiss for failure to state a claim, the complaint must be construed in the light most favorable to the plaintiff, with every doubt resolved in his behalf. *McKinney v. DeBord,* 507 F.2d 501, 503 (9 Cir. 1974). Moreover, in appraising the sufficiency of the complaint, the Court must follow the accepted rule "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### 1. Count One

Count One alleges violations of Section 10(b) of the Securities Act of 1934 and Rule 10b–5 thereunder. Since there is no federal statute of limitations applicable to Section 10(b) or Rule 10b–5, California's three-year fraud statute of limitations, Cal. Code of Civil Procedure § 338(4), is controlling. *United California Bank v. Salik,* 481 F.2d 1012, 1015 (9 Cir.) *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); *Turner v. Lundquist,* 377 F.2d 44, 47 (9 Cir. 1967). The statute begins to run only after the alleged fraud has been discovered or, in the exercise of reasonable diligence, could have been discovered. *Rochelle v. Marine Midland Grace Trust Co. of*

1. Defendants Mountain Home Properties, Ten Weed Corporation, and T. J. Bettes Company of New England, Inc., were dismissed from the case pursuant to a conditional dismissal filed on August 3, 1977.

2. No supporting affidavits or exhibits were submitted in regard to the statutes of limitations grounds urged by defendants. The motions are therefore treated as motions to dismiss for failure to state a claim rather than as motions for summary judgment.

*N. Y.*, 535 F.2d 523, 531 (9 Cir. 1976); *Turner v. Lundquist, supra,* 377 F.2d at 46–47.

■ The complaint shows that plaintiffs purchased the lots on December 20, 1972, more than *four* years before the complaint was filed. The statute does not, however, necessarily begin to run at the date of purchase. It begins to run only when the alleged fraud was or should have been discovered.

■ There is nothing in the complaint to indicate when the alleged fraud was or should have been discovered. Defendants' motions to dismiss Count One are therefore denied. *Kramer v. Loewi & Co., Inc.,* 357 F.Supp. 83, 88 (E.D.Wis.1973); *cf. Warren v. Lawler,* 343 F.2d 351, 360 (9 Cir. 1965).[3]

### 2. Counts Two and Three

■ Counts Two and Three allege violations of Section 1703(a)(2) of the ILSFDA.[4] Liability for violations of § 1703(a) is imposed under § 1709(b)(1).[5] Section 1711 provides that:

"No action shall be maintained to enforce any liability created under section 1709(a) or (b)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should

have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 1709(b)(1) of this title, unless brought within two years after the violation upon which it is based. In no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser."

To be timely filed, therefore, these claims must have been filed within two years after the alleged violation, but in no event later than three years after the sale.

Defendants rely only upon the three-year or "umbrella" limitations periods. The complaint on its face shows that plaintiffs purchased the lots more than *four* years prior to the filing of the complaint. Plaintiffs allege, however, that they "continued to make installment payments on said investment as a consequence of defendants' continuing program of false representations, by newsletters, brochures and the like, indicating that the Recreational Community Promotion was a prosperous, active and growing community, and that plaintiffs' investments therein were appreciating in value." Complaint ¶ 14, at 10. These allegations indicate that a tolling of the statute may have occurred. *Cf. Happy Investment Group v. Lakeworld Prop., Inc.,*

---

**3.** Defendants raise the argument that plaintiffs were required to allege when they discovered the alleged fraud. Defendants have cited two cases in support of this argument, but neither establishes that plaintiffs had such a burden. Nor has independent research by the Court disclosed *any support for defendants'* argument.

**4.** 15 U.S.C. § 1703(a) provides:

"It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

"(1) to sell or lease any lot in any subdivision unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title and a printed property report, meeting the requirements of section 1707 of this title, is furnished to the purchaser in advance of the signing of any contract or agreement for sale or lease by the purchaser; and

"(2) in selling or leasing, or offering to sell or lease, any lot in a subdivision—

"(A) to employ any device, scheme, or artifice to defraud, or

"(B) to obtain money or property by means of a material misrepresentation with respect to any information included in the statement of record or the property report or with respect to any other information pertinent to the lot or the subdivision and upon which the purchaser relies, or

"(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser."

**5.** 15 U.S.C. § 1709(b) provides:

"(b) Any developer or agent, who sells or leases a lot in a subdivision—

"(1) in violation of section 1703 of this title, or

"(2) by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot."

396 F.Supp. 175, 188 (N.D.Cal.1975). In light of these allegations, it cannot be said that it appears beyond doubt that plaintiffs can prove no set of facts to avoid the statute of limitations bar. Defendants' motions to dismiss Counts Two and Three are therefore denied.

B. *The Agreement and Mutual Release*

Defendants have moved for summary judgment on all counts on the ground that the claims asserted by plaintiffs are barred by an Agreement and Mutual Release ("Agreement") executed by plaintiffs on June 16, 1975, in settlement of a lawsuit plaintiffs had brought against Shastina Properties, Shastina Construction Company, Inc., and one Hal Messinger in the Superior Court of the State of California in and for the County of San Mateo.[6] Section 3.9 of the Agreement provides:

> "The parties do hereby release each other, and Fuls further releases Hal Messinger, their successors and assigns, and their agents and employees and no other third parties of and from any and all claims and demands of any kind or character, whether contractual or tortious in nature, including, without limitation of the generality of the foregoing, all claims based on oral or written contracts, agreements, understandings, statements, representations, assertions, promises or warranties."

The Agreement further provides:

> "This release specifically includes all claims encompassed within the complaint in said action number 183695 in the Superior Court of the State of California, County of San Mateo, described above, and any and all matters directly or indirectly related to the issues therein, as well as any other claims, known or unknown not embraced within the issues contained therein." Section 3.11.

Some nine months prior to the execution of the Agreement, plaintiffs had been mailed a Notice of Proposed Class Action Settlement which set forth allegations made against Shastina Properties in a class action brought by other purchasers of lots in the Lake Shastina development charging Shastina Properties with making false and misleading statements, omitting to disclose certain facts, and engaging in deceptive and unfair sales practices in connection with the sale of Lake Shastina lots. On November 4, 1974, plaintiffs returned a Request for Exclusion, thereby opting out of the class action. It is thus clear that, at least by November 4, 1974, plaintiffs were aware of possible claims they might have had against Shastina Properties arising out of their purchase of the Lake Shastina lots.

Under California law, which is controlling, *Air Transport Associates v. United States*, 221 F.2d 467, 472 (9 Cir. 1955), where the words of a release agreement are not ambiguous, the construction of the agreement is a question of law for the court. *Larsen v. Johannes*, 7 Cal. App.3d 491, 500, 86 Cal.Rptr. 744 (1970). The Court finds no ambiguity in the Agreement. It expressly releases the parties from "all claims and demands of any kind or character" "known or unknown." Since there is no factual dispute that plaintiffs knew they had possible claims against Shastina Properties arising out of their purchase of the lots involved in this lawsuit, the Court finds as a matter of law that the claims asserted by plaintiffs are barred by the Agreement.

To avoid what the Court believes to be an inescapable conclusion, *i. e.*, that known claims are barred by a release agreement that extends to "known claims," plaintiffs argue that the Agreement only covers claims that were in existence when the Agreement was executed, and that they did not have any claims against Shastina Properties until February 15, 1977, when notices of default on the lots were recorded. Plaintiffs argue that they did not have a claim until they were damaged, and that they were not damaged until the notices of default were recorded.

---

**6.** This action apparently involved a fourth lot that plaintiffs had purchased in the Lake Shastina development. No information is before the Court as to the nature of the state action, but the fourth lot apparently was developed.

■ Plaintiffs' argument is patently without merit. There is no question that plaintiffs could have brought this action immediately after the purchase of the lots. It has never been the law that one who purchases real property on the basis of fraudulent representations must liquidate his damages by, e. g., selling the property, before bringing an action for fraud.

Having decided that the Agreement bars the claims asserted by plaintiffs, the Court must now decide which of the defendants are covered by the Agreement as a matter of law. Shastina Properties, being a party to the Agreement, obviously was released. Besides Shastina Properties, the Court finds that Shastina Realty, Golden West, and Beverly were also released.

■ The Agreement extends to the parties' "successors and assigns, and their agents and employees and no other third parties." Shastina Realty and Golden West are alleged to have been the exclusive sales agents for lots in the Lake Shastina development. As agents of Shastina Properties, both were released by the Agreement.

■ Beverly is alleged to have been the alter ego of Shastina Properties. Under California law, a corporation is treated as being the alter ego of another corporation only if there is "such a unity of interest and ownership that the individuality of such corporation and the owner or owners of its stock has ceased." *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service, Inc.,* 217 Cal. 124, 129, 17 P.2d 709 (1932). Where the alter ego doctrine applies, therefore, the two corporations are treated as one for purposes of determining liability. It follows that where the one corporation is released from liability, so too is the other. Thus, it is unnecessary to consider whether Beverly was in fact the alter ego of Shastina Properties in this case. If it were, it would also be released by the Agreement.

The motions of defendants Shastina Properties, Shastina Realty, Beverly, and Golden West for summary judgment are therefore granted.

### C. Liability of DMI

DMI has raised several additional grounds in its motion to dismiss or for summary judgment. In sum, DMI contends that there is no factual dispute as to its participation in the transactions involved in this lawsuit, and that as a matter of law it cannot be held liable under any of plaintiffs' theories of liability.

### 1. As a Controlling Person under 15 U.S.C. § 78t(a)

Plaintiffs do not contend that DMI was a primary participant in the alleged fraudulent activity. In seeking to impose liability on DMI under Section 10(b) of the Securities Act of 1934 and Rule 10b–5, plaintiffs advance but one theory: that DMI is liable as a controlling person.

The uncontroverted evidence establishes that on or about July 31, 1970, DMI made a loan to Shastina Properties secured by a deed of trust on the Lake Shastina development and by accounts receivable (*i. e.,* the land-sale contracts). Thereafter, DMI made additional loans with the same security.

By way of affidavit, DMI has presented evidence that DMI acted solely as a passive lender; that DMI did not have any right and did not attempt to exercise any right to control, supervise, or participate in the activities which form the basis of plaintiffs' claims; and that DMI did not know of, participate in, supervise, or control in any way the alleged fraudulent representations.

Plaintiffs have submitted exhibits in opposition,[7] but, at most, these show only that DMI, in monitoring the loan to Shastina Properties, periodically received financial statements and sales reports, and occasionally inspected construction and development work. Nothing submitted by plaintiffs controverts the evidence presented by DMI that it exercised no control over the sales

---

7. DMI objected to these exhibits since they were not properly certified nor did plaintiffs attach supporting affidavits. In light of the Court's disposition of DMI's motions, it need not address these objections.

techniques employed by Shastina Properties and was unaware of the alleged fraudulent representations.

■ In this Circuit, the test of controlling person liability under 15 U.S.C. § 78t(a) is that

> " 'the controlling person " * * * must have acted in bad faith and directly or indirectly induced the conduct constituting a violation or cause of action." ' *Hecht v. Harris, Upham and Co.,* 430 F.2d 1202, 1210 (9 Cir. 1970) quoting *Kamen v. Paul H. Aschkar and Company,* 382 F.2d 689, 697 (9 Cir. 1967) cert. denied 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85." *Strong v. France,* 474 F.2d 747, 752 (9 Cir. 1973).

There are no facts in this case to indicate that DMI acted in bad faith or that DMI directly or indirectly induced Shastina Properties to make the alleged fraudulent representations. DMI has submitted evidence to show that it had no knowledge of or participation in the alleged fraudulent representations, and nothing submitted by plaintiffs indicates that DMI was aware, or had reasonable grounds for believing, that fraudulent activities were taking place. DMI therefore cannot be held liable as a controlling person.

**2.** *As an Aider and Abettor under the ILSFDA*

■ In seeking to impose liability on DMI under the ILSFDA, plaintiffs argue that DMI is liable as an aider and abettor. Plaintiffs do not contend that DMI is liable as either a "developer" or "agent," as defined by the Act. In order to hold DMI liable as an aider and abettor, plaintiffs must show that DMI participated in the fraud in violation of the Act. *McCown v. Heidler,* 527 F.2d 204, 207 (10 Cir. 1975). They must show knowing assistance of or participation in a fraudulent scheme. *Ibid.* Plaintiffs have failed to demonstrate to the Court that there is any factual dispute as to DMI's knowledge of or participation in the alleged fraudulent representations. The affidavits and exhibits submitted by DMI show that DMI did not participate in and was not aware of the alleged fraudulent representations. DMI therefore cannot be held liable as an aider and abettor under the ILSFDA.

**3.** *As a Joint Venturer with Shastina Properties*

Plaintiffs have also advanced the argument that DMI is liable under Counts One, Two and Three as a joint venturer with Shastina Properties. Under California law,

> "A joint venture exists when there is 'an agreement between the parties under which they have a community of interest, that is, a joint interest, in a common business undertaking, an understanding as to the sharing of profits and losses, and a right of joint control.' " *Connor v. Great Western Savings and Loan Ass'n,* 69 Cal.2d 850, 863, 73 Cal.Rptr. 369, 375, 447 P.2d 609, 615 (1968), *quoting Holtz v. United Plumbing & Heating Co.,* 49 Cal.2d 501, 506–507, 319 P.2d 617 (1957).

■ The loan agreement provided that DMI was to receive as compensation for the making of the loan a promissory note for the loan amount together with interest of 10% per annum, and a $250 lot release fee for each lot developed and sold within the Lake Shastina development. Plaintiffs contend that this last provision constituted "an understanding as to the sharing of profits and losses" from the development. With this the Court cannot agree.

The compensation received by DMI was fixed. Although the amount it received in the form of lot release fees did depend upon the number of lots sold in the development, the Court does not find this to be a sharing in the profits of the development. DMI had no direct interest in the payments received by Shastina Properties—its only interest with respect to the lot release fees was in the sale of the lots. It had no interest in the amount purchasers paid for the lots. It received its fees whether the lots were sold at a profitable figure or not. It thus cannot be said that DMI shared in the profits and losses of the development. DMI was compensated not as a joint venturer, but as a lender, with repayment of the loan amount together with interest plus a fee for the release of its security in the lots.

Thus, as to DMI, the Court finds that there is no genuine issue as to any material fact and that DMI is entitled to judgment in its favor as a matter of law on Counts One, Two and Three.

D. *Dismissal of Counts Four through Eight*

Since Counts One, Two and Three contain the only federal claims asserted by plaintiffs, the Court in its discretion dismisses Counts Four, Five and Six, in which only state claims are asserted.

Since Counts Seven and Eight seek only ancillary relief, they are also dismissed.

III. *ORDER*

IT IS HEREBY ORDERED that the motion for summary judgment of defendants Shastina Properties and Shastina Realty is granted.

IT IS HEREBY FURTHER ORDERED that the motion for summary judgment of defendants Beverly and Golden West is granted.

IT IS HEREBY FURTHER ORDERED that the motion for summary judgment on Counts One, Two and Three of defendant DMI is granted.

IT IS HEREBY FURTHER ORDERED that the motion to dismiss Counts Four, Five, Six, Seven and Eight of defendant DMI is granted.

IT IS HEREBY FURTHER ORDERED that counsel for respective defendants shall prepare an appropriate form of judgment in accordance with this Memorandum of Opinion, obtain approval of counsel for plaintiffs as to form, and submit it to the Court for execution within ten (10) days of the date of this opinion.

IT IS HEREBY FURTHER ORDERED that unless a dismissal is filed within thirty (30) days, there will be a status conference held in this matter on Thursday, March 23, 1978, at 9 A.M. Counsel for plaintiffs and remaining defendants shall appear at such status conference.