Darlene Marie DOGANIERI and Louis Doganieri, Plaintiffs,

v.

UNITED STATES of America, Defendant and Third-Party Plaintiff,

v.

Daniel Richard ROE, Third-Party Defendant.

Civ. A. No. 80–421–E.

United States District Court, N. D. West Virginia, Elkins Division.

Aug. 27, 1981.

Stanley E. Preiser, and John H. Kozak, Preiser & Wilson, Charleston, W.Va., for plaintiffs.

Benjamin J. Civiletti, Atty. Gen. of U. S., Washington, D.C., Stephen G. Jory, U. S. Atty., Elkins, W.Va., R. Edison Hill and Henry E. Wood, III, Charleston, W.Va., for defendant and third-party plaintiff.

## ORDER

MAXWELL, Chief Judge.

Plaintiffs, Darlene Marie Doganieri and Louis Doganieri brought the above-styled civil action in this Court pursuant to 28 U.S.C. § 1346(b) and the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* This action arises out of a shooting incident which occurred November 9, 1977 within the boundaries of the Monongahela National Forest. The action, naming the United States of America as Defendant, was filed September 12, 1980. On September 29, 1979 the Plaintiffs negotiated a settlement with Daniel Richard Roe, a hunter involved in the incident. In consideration of the settlement sum of $10,000.00, the Plaintiffs executed two broadly worded releases discharging Daniel Richard Roe

> his successors and assigns, and/or his heirs, executors and administrators, and also any and all other persons, associations and corporations, whether herein named or referred to or not, and who, together with the above named, may be jointly or severally liable to the Undersigned, of and from any and all, and all manner of, actions and causes of action ... arising out of an occurrence that happened on or about the 9th day of November, 1977, at or near Elkins, West Virginia.

The United States answered and filed third party complaints against the State of West Virginia and Daniel Richard Roe. The Defendant and the two third party Defendants have each filed Motions to Dismiss. By agreement between the United States and the State of West Virginia, and pursuant to Rule 4(a) of the Federal Rules of Civil Procedure, the State of West Virginia has been dismissed from this action.

With respect to the pending Motions to Dismiss of the United States and Roe, both assert that the complaint fails to state a claim upon which relief may be granted because the Plaintiffs fully released Roe "and all others" in consideration for $10,-000.00. Plaintiffs do not dispute that they have compromised and settled their claims against Roe, but assert that they did not contemplate that the releases would extend to any other parties, and in particular, to the United States of America. Plaintiffs request that the Motion to Dismiss be denied or, in the alternative, reform the releases so as to reflect the true intent of the parties to the releases, as asserted by Plaintiffs. Plaintiffs urge the Court to consider parol evidence on the adequacy of the consideration for the release and on the intention of the parties to release third parties, such as the United States, who are strangers to the release.

The Federal Tort Claims Act, 28 U.S.C. § 2674, provides that the "United States shall be liable . . . in the same manner and to the same extent as a private individual." The law of the state where the alleged acts of negligence took place determines the liability of the parties in an action brought pursuant to this section. *U.S. v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Moreover, it has been held that the adoption of proper state law applies not only as to the creation of the liability but also as to release from liability. *Matland v. U.S.*, 285 F.2d 752 (3d Cir. 1961), citing *Air Transport Associates, Inc. v. U.S.*, 221 F.2d 467, 471 (9th Cir. 1955). Therefore, the law of the State of West Virginia, the situs of the unfortunate occurrence, is the law which shall be applied in determining the legal issues which have or may arise during the course of litigation.

Plaintiffs, in their "Response to Motion to Dismiss of the United States", first assert that the consideration for the contracts or releases is inadequate and the court should admit parol evidence on the extent of injuries suffered to determine whether the parties intended the $10,000.00 settlement "to be complete satisfaction for the damages they suffered." As the Court views the matter, it is believed that the Plaintiffs misconstrue the issue. The issue is not whether the settlement and releases were intended to be "complete satisfaction" in actual monetary terms, but whether the parties intended to release all others from liability. A valid release may often be based upon consideration that is substantially less than the actual expenses incurred as a result of the negligence of the tortfeasor, but if the release is clear and unambiguous, there is no need to resort to parol evidence.

Failure of consideration may, however, invalidate a contract, since it is a fundamental rule of the law of contracts that in order for an agreement to be enforceable, it must be supported by consideration. *First National Bank v. Marietta Mfg. Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967). The consideration necessary to support a contract need not be equal to what is being exchanged, as long as it is of some value. *Janes v. Felton*, 99 W.Va. 407, 129 S.E. 482 (1925), *Lovett v. Eastern Oil Co.*, 68 W.Va. 667, 70 S.E. 707 (1911), *Newell v. High Lawn Memorial Park Co.*, 264 S.E.2d 454 (W.Va.1980). The case cited by Plaintiffs in support of their position, states the general rule that a release of an obligation must be based upon a consideration deemed valuable in law. *Preston County Coke Co., v. Preston County Light and Power Co.*, 146 W.Va. 231, 119 S.E.2d 420 (1961). Here, the $10,000.00 recited as consideration for the releases is more than adequate to render the written instrument valid and enforceable.

Plaintiffs second response to the motion to dismiss, is that the releases are ambiguous and parol evidence should be admitted to demonstrate the intent of the parties when the releases were made, and in particular, to properly construe the general language of the first paragraph. Plaintiffs and Defendants both discuss in detail the proper construction of West Virginia Code § 55–7–12 relating to joint tortfeasors and the cases discussing the same.

At common law, the rule was that the release of one tortfeasor, released all for the reason that there is but a single injury and there can be but one satisfaction for the wrong. 2 Williston, *Contracts* § 338A (3d ed. 1959). "[T]he modern trend is toward a rule which abrogates the strict common-law release rule and makes the intention of the parties to a release the test of its effect as a release of joint tortfeasors not parties thereto." 73 A.L.R.2d 403, 408. Many states have codified this abrogation or change of the common law rule. Some states prescribe to the Uniform Joint Obligations Act which, when summarized, provides that the discharge of one discharges all others *unless the releasor expressly reserves* his rights against the others. Other jurisdictions have prescribed to the Uniform Contribution Among Tortfeasors Act which is the mirror image of the Joint Obligation Act. The Uniform Contribution Act provides that the release of one joint tortfeasor does not discharge the others *unless the release so provides.* 73 A.L.R.2d 403, 432–35. The West Virginia statute, however, does not appear to be modeled after either Act and instead provides:

> A release to, or an accord and satisfaction with, one or more joint trespassers, or tort-feasors, shall not inure to the benefit of another such trespasser, or tortfeasor, and shall be no bar to an action or suit against such other joint trespasser, or tort-feasor, for the same cause of action to which the release or accord and satisfaction relates. W.Va. Code § 55–7–12 (1981 Replacement Vol.).

§ 55–7–12 was recently cited and reviewed by the West Virginia courts in the case of *Thornton v. Charleston Area Medical Center*, 213 S.E.2d 102 (W.Va.1975). Plaintiff relies heavily upon this case for support of their position that, due to their relatively small settlement with Roe, and in light of the extensive injuries suffered and the alleged ambiguities in the releases, this Court should entertain parol evidence. An examination of the facts of *Thornton*, however, reveals that the issue there was whether the release of the initial tortfeasor also released successive tortfeasors. The discussion of § 55–7–12 is dicta and merely recites the generally accepted rule in West Virginia that a release does not automatically bar a second action against other joint tortfeasors. Moreover, *Thornton* was concerned primarily with the overruling of prior cases which prevented a second action for negligent medical care or treatment of the original injury. There was no decision made commanding the trial court, upon remand, to consider parol evidence to explain the terms of the release in *Thornton*. Instead, the trial court was reversed solely because it has ruled, as a matter of law, that an unqualified release of the original tortfeasor prevented further recovery from the treating physicians and hospitals as alleged successive and independent tortfeasors.

The West Virginia court did discuss the issue of parol evidence, but it clearly did so in the context of the release of "successive tortfeasors." 213 S.E.2d at 109. Furthermore, the language of the release quoted in *Thornton*, 213 S.E.2d at 104, reflects a working which specifically released only two persons, and is much more restrictive than the one at issue in the case at bar. For these reasons, the court is of the opinion that *Thornton* is not dispositive of the instant issues.

Similarly, in the case of *Tennant v. Craig*, 156 W.Va. 632, 195 S.E.2d 727 (1973), the release being construed there released one specific party and did not involve the broad, all-inclusive language employed here. Thus, the interpretation of a release, such as the one executed by the Plaintiffs, is a case of first impression in West Virginia case law.

Similar language in a release has, however, been interpreted on two occasions by the United States District Court for the Western District of Pennsylvania. In *Mayle v. Criss*, 169 F.Supp. 58 (W.D.Pa. 1958) the Court found that where passengers released the host driver "and all other persons", they were not precluded from suing the estate of the driver of the other car involved in the accident. The decision,

however, did not involve parol evidence, but was determined by application of the rule of construction that "specific words limit the meaning of general words" and the statutory declaration of West Virginia Code § 55–7–12. 169 F.Supp. at 60.

Moreover, in *Bonar v. Hopkins*, 311 F.Supp. 130 (W.D.Pa.1969), *affirmed*, 423 F.2d 1361 (3d Cir. 1970), the Court found that a release of one driver "and all other persons, firms or corporations" precluded further action by passengers against the driver of the other car involved in the accident. The Court examined both the Pennsylvania law, which has enacted the Uniform Contribution Among Tortfeasors Act and the West Virginia statute § 55–7–12, and found that both would give effect to the scope of the release as written. As the District Court stated, "there is nothing inconsistent between giving effect to the clear intent of the release at bar and the language of the West Virginia statute. By its terms, the agreement is 'a release to all other persons', the latter term reasonably including the defendant." 311 F.Supp. at 133.

■ The interpretation and analysis used by the *Bonar* court would seem to be the one preferred to that applied in *Mayle*. Therefore, we look to the general rules of interpretation of written instruments and determine whether the releases are ambiguous and require the admittance of parol evidence to determine the intention of the parties.

■ The parol evidence rule, which is actually a substantive rule rather than a rule of evidence, excludes, in the absence of fraud, duress, or mutual mistake, evidence of prior or contemporaneous oral agreements which would vary a written agreement. The rule, designed to promote the certainty and stability of contractual obligations, "is founded upon the principle that when parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnishes better and more definite evidence of what was undertaken by each party than the memory

of man." 30 Am.Jur. *Evidence*, § 1016 (1967). And when a written agreement becomes the subject of litigation and is brought before the court, it is the role of the judiciary to ascertain the intention of the parties. This task is to be accomplished, if at all possible, from an examination of the writing, within its "four corners." If the court finds that the parties have clearly expressed their intent, the writing is declared unambiguous and is enforced as written. 4 Williston, *Contracts* § 601 (3d ed. 1961).

■ Similarly, the law in West Virginia is clear that "where the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements of any of the parties to it made contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary, or explain its terms, in the absence of fraud, accident or mistake in its procurement." *Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225, 232–33 (1947), *Mundy v. Arcuri*, 267 S.E.2d 454 (W.Va.1980), *North American Royal Coal v. Mountaineer Developers, Inc.*, 239 S.E.2d 673, 675 (W.Va.1977), *Paxton v. Benedum Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472, 476 (1917). The writing must speak for itself without the aid of extrinsic evidence. *Kanawha Banking & Trust, supra, Smyth v. Brich Row Realty Co.*, 97 W.Va. 40, 124 S.E. 499 (1924).

Here, the releases clearly and explicitly discharge not only Daniel Richard Roe, but extend to "any and all other persons ... whether herein named or referred to or not ...." As noted above, it must be assumed that the parties intended what is expressed in their writing. The language could be no more forceful. There are no allegations of fraud, duress or overreaching. In fact, both parties were represented by able, competent counsel at the time of the making and signing of the releases.

Plaintiffs assert that the fourth paragraph, an indemnification clause, is inconsistent with the release of all persons, thus, rendering the releases ambiguous. But a

close reading of the fourth paragraph shows that the Plaintiffs agreed to indemnify "the said parties released hereby." In other words, all persons are released and all persons are indemnified. This language is not sufficient to render the entire instrument ambiguous. Therefore, there being no ambiguity found, the Court must declare that the intent of the parties is expressed within the four corners of the document and there is no justification to resort to parol evidence for further interpretation of the agreement.

Lastly, Plaintiffs assert that the Court should reform the releases, as they were made as the result of a mutual mistake. Reformation of written agreements is a most drastic measure and should be engaged in by the courts only as a last resort. There is no mutual mistake indicated by the pleadings. In fact, Plaintiffs admit that at the time of making of the releases that they possessed medical bills that showed Ms. Doganieri's medical expenses alone to be at least $28,150.10 and that she would probably incur more such expenses. Plaintiffs cannot now assert mistakes as to the seriousness of the injuries.

Undoubtedly Ms. Doganieri suffered serious and unfortunate injuries. She pursued the individual, allegedly the negligent party, and for valuable consideration, executed a release. The court has found that the release is not ambiguous and clearly discharges all persons from any and all actions or suits. Written instruments must be accorded finality and certainty to preserve contractual rights and obligations. Accordingly, it is

ORDERED that the Motions to Dismiss of the United States of America and Daniel Richard Roe be, and the same are hereby, GRANTED, and this action is Dismissed with prejudice and retired from the docket of this Court.