(No. 57355.—

RICHARD F. ALSUP *et al.*, Appellees, v. THE FIRE-
STONE TIRE & RUBBER COMPANY, Appellant.

*Opinion filed January 20, 1984.—Modified on
denial of rehearing March 30, 1984.*

RYAN, C.J., and UNDERWOOD, J., dissenting.

William Freivogel, of Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, and Eric S. Palles and R. Marlin Smith, of Ross & Hardies, all of Chicago, for appellant.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Judith E. Fors, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

On April 8, 1978, the automobile in which Floyd and Mabel Alsup were passengers and which was being operated by their son, Richard F. Alsup, was struck by one driven by David Williams in which his parents were riding. Each of the Alsups was severely injured. Williams was insured under a policy with a $50,000 one-accident limit for bodily injury. A settlement was agreed upon for the policy limit, and late in 1979 the Alsups executed releases in favor of David Williams and his parents "and all other persons, firms, and corporations, both known and unknown." It is said that at the time the releases were given, the Alsups had already incurred medical expenses in excess of $40,000. A letter from a representative of the Williams' insurer during the course of the settlement to Mabel Alsup's attorney contained the statement that "the policy limits are clearly not adequate in light of the injuries sustained by the Alsup family." Each of the Alsups received roughly equal shares of the $50,000 settlement. There was also a property-damage settlement in the amount of $5,554. Richard and his parents were represented by separate attorneys. The attorneys witnessed the releases of their respective clients.

Floyd Alsup was declared incompetent on March 28, 1980. The complaint alleged that his condition was caused by his injuries. On April 7, 1980, Richard Alsup, individually, and Mabel Alsup, individually and as admin-

istrator for Floyd Alsup, filed a products liability complaint in the circuit court of Cook County against Firestone Tire & Rubber Company (Firestone), seeking damages for personal injuries. Firestone was the manufacturer of the tire on the Williams' auto which sustained a blowout causing the auto to veer and collide head on with the Alsups' car. The circuit court denied Firestone's motion for summary judgment, but certified the following question for appeal under our Rule 308 (73 Ill. 2d R. 308):

> "Whether the terms of a release which include the payer 'and all persons, firms and corporations, both known and unknown, of and from any and all claims' provide for the release of an alleged joint tortfeasor pursuant to Section 302(c) of the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. ch. 70, sec. 302(c)), where plaintiffs investigated whether an action could be brought against the alleged joint tortfeasor and believed that no cause of action existed and where plaintiffs have stated in affidavits that they did not intend to release the alleged joint tortfeasors, but where plaintiffs executed the release after consultation with their attorneys?"

In an unpublished order, the appellate court denied the defendant's application for leave to appeal. We granted Firestone's petition for leave to appeal. 87 Ill. 2d R. 315.

The releases provided for the release and discharge of the "Payer, and all other persons, firms, and corporations, both known and unknown, of and from any and all claims, demands, damages, actions, causes of action, or suits at law or in equity, of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries both to person or property resulting, or to result, from an accident which occurred on or about the 8th day of April, 1978, at Bowling Green, Mo." The release further provided that "in determining said sum there has been taken into consideration the fact that seri-

ous or unexpected consequences might result from the present injuries, known or unknown, from said accident, and it is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said accident."

Before the settlement agreement and before the execution of the releases, the blown out Firestone tire had been turned over by the Alsups and the Williams' insurance carrier to an independent testing laboratory to determine whether there had been a defect in the tire which might form the basis of a cause of action against Firestone. The laboratory reported that it "found no defects in workmanship or materials in this tire or wheel." The plaintiffs' brief states that "at the time the releases were executed, plaintiffs' attorneys and [the Williams' insurer] were under the impression that there was no case to pursue against Firestone." After the execution of the releases, the plaintiffs received a report from a second testing laboratory stating that the tire had been defective. The report is not included in the record. Which laboratory report is correct is, of course, undetermined.

Section 2 of "An Act in relation to contribution among joint tortfeasors" (the Act) provides in part:

"(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in amount of the consideration actually paid for it, whichever is greater." Ill. Rev. Stat. 1979, ch. 70, par. 302(c).

Our statute is based upon the Uniform Contribution Among Tortfeasors Act.

The language of the releases given by the plaintiffs, from which we have quoted, is general and broad. The releases purport to release the payers and "all other persons, firms, and corporations, both known and unknown" from any and all claims resulting from the accident in which the plaintiffs were injured. As appears above, section 2(c) of the Act provides that a release "does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide." The question for decision is whether the releases given by the plaintiffs satisfied the condition, *viz,* "unless its terms so provide."

The plaintiffs contend that the Act requires a release to name, or otherwise specifically identify, another tortfeasor in order to discharge that tortfeasor from liability. They say that the inclusion of general language such as "all other persons, firms, and corporations" is not effective to release persons other than the tortfeasor or tortfeasors who specifically contract for the release.

There have been holdings that this specific identification of other tortfeasors is not required by the uniform act for their discharge. These include *Battle v. Clanton* (1975), 27 N.C. App. 616, 220 S.E.2d 97, followed in *White v. American Motors Sales Corp.* (W.D. Va. 1982), 550 F. Supp. 1287, 1290 (applying North Carolina law); *Liberty v. J. A. Tobin Construction Co.* (Mo. App. 1974), 512 S.W.2d 886.

There are convincing reasons, however, against holding that a broadly worded general release, as we have here, will satisfy the conditional language in section 2(c). A purpose of the uniform act was to abrogate the common law rule that the release of one joint tortfeasor releases all joint tortfeasors. (See Unif. Contribution Among Tortfeasors Act, Commissioners' Prefatory Notes, 12 U.L.A. 57, 59-62 (1975).) The common law rule deservedly has been strongly criticized. It has been described as "harsh," "without any rational basis," and "very unfair." (J. Calamari & J. Perillo, *Contracts* sec. 20–3 (2d ed. 1977).) If lit-

eral effect were given to every use of a general release form and "all other persons, firms, and corporations," as appears here, were to be discharged, an important purpose of the Act would be thwarted by the unintended release of persons who were strangers to the release contract. The common law rule released joint tortfeasors by operation of law. By the general release there would be, on the ground of contract, an unwitting discharge of joint tortfeasors.

The legislature intended to abolish the common law rule that produced an involuntary discharge of joint tortfeasors. Section 2(c) states that a release will not operate to "discharge any of the other tortfeasors from liability for the injury ***." We do not consider that the modifying language that follows, *i.e.*, "unless its terms so provide," should be interpreted to allow the legislative intendment of nullifying the common law rule to be frustrated through the use of what are often general release forms. The legislature surely was aware of the criticism that the common law rule often operated to violate the intentions of persons giving releases. We consider that the legislature's intendment was that that under section 2(c) a release was not to discharge "other tortfeasors" from liability unless they were designated by name or otherwise specifically identified.

Our conclusion that tortfeasors, other than the one or ones who bargained for the release, must be specifically identified, has been reached by other courts under the Uniform Contribution Among Tortfeasors Act or their own similar statutes. In *Beck v. Cianchetti* (1982), 1 Ohio St. 3d 231, 439 N.E.2d 417, it was held that a joint tortfeasor must be specifically named or otherwise identified in order to be discharged by a release obtained from an unrepresented injured party. Accord *Alaska Airlines, Inc. v. Sweat* (Alaska 1977), 568 P.2d 916; *Sage v. Hale* (1973), 75 Misc. 2d 256, 347 N.Y.S.2d 416; *Duncan v. Cessna Aircraft Co.* (Tex. Feb. 5, 1984), No. C—1343.

That the plaintiffs were represented by counsel when

they signed the releases should not change the result. We have determined that the Act requires that "other tortfeasors" will not be discharged unless they have been named or specifically designated. That attorneys were representing the plaintiffs does not serve to suspend the Act or make it nonoperative. That is, it does not require the holding that Firestone was discharged from possible liability, though it was not named or designated in the release as is necessary under the Act. The plaintiffs, of course, did not intend to release the defendant or any person other than the "payers" in the release and their successors or assigns. They note that their attorneys and they submitted affidavits to the trial court, which stated that at the time the releases were executed the plaintiffs did not intend to release Firestone, because they believed that no cause of action existed against Firestone.

Some may question our holding that a release must specifically identify the other tortfeasors in order to discharge their liability, believing that the tortfeasor taking the release will remain liable to the other tortfeasors for contribution. That belief would be unfounded. Our contribution statute, as well as the Uniform Act, provides that a tortfeasor who settles in good faith with a claimant pursuant to paragraph (c) of our statute is discharged from all liability for any contribution to any other tortfeasor. Ill. Rev. Stat. 1979, ch. 70, par. 302(d). See also *Claim of Torres v. State* (1979), 67 A.D.2d 814, 413 N.Y.S.2d 262; *Sobik's Sandwich Shops, Inc. v. Davis* (Fla. 1979), 371 So. 2d 709, 711.

We judge that the widespread use of and reliance upon general releases to discharge all tortfeasors, including those not specifically identified in the release, require that our decision here be made prospective in operation. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1; *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11.) We accordingly hold

that this decision will apply prospectively to releases from liability executed after the date of the filing of this opinion, January 20, 1984.

For the reasons given, the judgment of the circuit court of Cook County, which denied Firestone's motion for summary judgment, is affirmed. The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Affirmed and remanded.*

CHIEF JUSTICE RYAN, dissenting:

I do not believe that in order to discharge other tortfeasors they must be designated by name or be otherwise specifically identified in the release. This is not what section 2(c) of the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)) provides. That section requires only that a release given to a tortfeasor does not discharge any other tortfeasor "unless its terms so provide ***." The limitation of that statute, applied to the facts of this case, means only that the release given by plaintiffs Alsup to tortfeasor Williams and his parents will not release anyone else by operation of law. That is, by virtue of the statute, the common law principle that the release of one joint tortfeasor releases all no longer applies. But under the statute, if the terms of the release provide that others than the specific tortfeasor to whom the release is given are released, the release operates to release from liability more than just the one to whom the release is given. Nothing in the statute requires that the others released be identified by name or otherwise specifically identified. In this case, the release ran to the named individuals "and all other persons, firms and corporations both known and unknown." Thus, the release did provide that it was to release others than those to whom it was given. Nothing in the statute prevents the giving of such a general release. I shall discuss this further later in this dissent.

A majority of the jurisdictions that have considered the question now before this court have reached a result contrary to that reached in the majority opinion. In those cases, general releases similar to that which we are considering here were held to be effective. The provisions of the statutes of those jurisdictions which provided that a release of one joint tortfeasor does not release other joint tortfeasors *unless the release so provides* were held not to require the other tortfeasors to be named or specifically identified. (See *Johnson v. City of Las Cruces* (1974), 86 N.M. 196, 521 P.2d 1037; *Battle v. Clanton* (1975), 27 N.C. App. 616, 220 S.E.2d 97; *Peters v. Butler* (1969), 253 Md. 7, 251 A.2d 600; *Hasselrode v. Gnagey* (1961), 404 Pa. 549, 172 A.2d 764; *Liberty v. J. A. Tobin Construction Co.* (Mo. App. 1974), 512 S.W.2d 886.) In a Federal case, *Douglas v. United States Tobacco Co.* (8th Cir. 1982), 670 F.2d 791, 794, the court stated that the majority of cases from other jurisdictions have held that language releasing any and all persons in addition to the named parties satisfies the " 'unless the release so provides' " provision of the uniform act. In addition to *Peters v. Butler, Johnson v. City of Las Cruces,* and *Hasselrode v. Gnagey,* cited above, the court in *Douglas* cites *Morison v. General Motors Corp.* (5th Cir. 1970), 428 F.2d 952, *Doganieri v. United States* (N.D. W. Va. 1981), 520 F. Supp. 1093, *Stefan v. Chrysler Corp.* (D. Md. 1979), 472 F. Supp. 262, *aff'd* (4th Cir. 1980), 622 F.2d 587, *Fuls v. Shastina Properties, Inc.* (N.D. Cal. 1978), 448 F. Supp. 983, *Bonar v. Hopkins* (W.D. Pa. 1969), 311 F. Supp. 130, aff'd (3d Cir. 1970), 423 F.2d 1361, and *Dorenzo v. General Motors Corp.* (E.D. Pa. 1971), 334 F. Supp. 1155.

The majority opinion relies on *Beck v. Cianchetti* (1982), 1 Ohio St. 3d 231, 439 N.E.2d 417, *Alaska Airlines, Inc. v. Sweat* (Alaska 1977), 568 P.2d 916, and *Sage v. Hale* (1973), 75 Misc. 2d 256, 347 N.Y.S.2d 416. In *Alaska Airlines, Inc. v. Sweat,* both the covenant not to sue and the

order dismissing the case *specifically stated that the settlement did not include a release of Alaska Airlines.* Also, Alaska had previously rejected the common law rule and had held that a release of one tortfeasor did not release another unless such other tortfeasor was specifically named in the release. (*Young v. State* (Alaska 1969), 455 P.2d 889.) In *Alaska Airlines, Inc. v. Sweat,* the court was construing the language of that State's uniform joint tortfeasor act which stated that a release or covenant not to sue does not discharge any other tortfeasor "unless its terms so provide." The court simply followed its previous holding in *Young v. State* and reached the same conclusion it would have reached at common law. This holding is not convincing authority in support of the majority decision in our case.

In *Sage v. Hale* and *Beck v. Cianchetti,* although professing to strike out in a new direction, each court attempted to buttress its holding that other tortfeasors are not released unless named or specifically identified with equitable considerations peculiar to the case before it. Such matters were used as the basis for attacking releases at common law prior to the Act. (*Reede v. Treat* (1965), 62 Ill. App. 2d 120, 129.) In *Sage v. Hale* the court stated that, "[a]s a matter of law, the broad language of the release in the present case, interspersed with additional verbiage on a printed form, does not satisfy the statutory requirement." (*Sage v. Hale* (1973), 75 Misc. 2d 256, 258, 347 N.Y.S.2d 416, 419.) In *Beck v. Cianchetti,* the court stated that the statutory phrase "unless its terms otherwise provide" requires a release to expressly designate by name or otherwise specifically describe or identify any tortfeasor to be discharged. However, that court then pointed out that in the case before it the critical language "all other persons" was contained among the printed terminology of the release. The court emphasized that the person giving the release was only 19 years old and did not have the advice

of counsel when the release was signed. The court then retreated from its holding that the release must designate by name or otherwise specifically describe or identify any tortfeasor to be discharged and states:

> "Consequently, the insurance company has the burden of showing that the injured party understood the terminology and intended the release of the unnamed tortfeasors." (*Beck v. Cianchetti* (1982), 1 Ohio St. 3d 231, 235, 439 N.E.2d 417, 420.)

It would therefore appear that if the insurance company could show that the injured person intended to release "all other persons" the release would operate as a general release. However, in the next paragraph the court appears again to reverse directions and stated:

> "Broad general language, such as 'all other persons,' is not sufficient." (1 Ohio St. 3d 231, 235, 439 N.E.2d 417, 420.)

Thus, in the three cases relied upon by the majority, there were extraneous reasons compelling the construction of the language of the Act as requiring that the tortfeasors released be named or otherwise specifically identified. We have no such extraneous circumstances in the case before us. Weighed against the cases I have cited above which hold contrary to the holding in this case, the majority opinion is not supported by very convincing authority and obviously adopts a minority view.

If this court has made this choice because of the concern that such "boilerplate" general language printed in the release may mislead a person into unwittingly releasing other joint tortfeasors, I call the court's attention to the position taken by the Florida Supreme Court. In *Hurt v. Leatherby Insurance Co.* (Fla. 1980), 380 So. 2d 432, the court considered the language of the Uniform Contribution Among Joint Tortfeasors Act, which provides that a release does not release any of the other tortfeasors "unless its terms so provide." The court stated, as I did above,

that clearly this language is not a prohibition against a general release. The court stated that indeed the Uniform Act expressly authorizes the discharge of all tortfeasors. So long as the parties express their intent to discharge all possible tortfeasors, they are free to do so. The Florida court noted, however, that all-inclusive "boilerplate" language routinely included in a printed release may not reflect the intent of the parties and stated that the manifestation of intent must be more explicit than the signing of a form which in the printed material contains broad general-release language in addition to providing spaces where the names of the specifically discharged parties may be inserted. The court held that whether a printed general release is effective to discharge other than specifically named tortfeasors is a question of fact. The holding of the Florida court would obviate the equitable concern about the printed general-release language which seems to have influenced the decisions in *Sage v. Hale* and *Beck v. Cianchetti.*

I agree with the Florida court that there is nothing in the language of our statute which prevents an injured person from executing a general release, releasing all other persons so long as the terms of the release so provide and so long as it was the intent of the injured person to release the named tortfeasor and "all other persons." If the general-release language is contained in a printed release form, I could hold, as the Florida court held, that extraneous evidence should be allowed as to the intent of the parties. Whether such a release is effective to discharge others than those specifically named should be a question of fact. I find further support for such a holding in the decisions of our appellate court rendered in considering the effect of a general release prior to the adoption of our contribution act. These holdings stated that it is the intention of the parties which controls the scope and extent of the release. *Schrempf v. New England Mutual Life Insurance*

*Co.* (1982), 103 Ill. App. 3d 408, 413; *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694.

Such a construction would avoid the problems that are created by requiring the release to name or specifically identify those to be released. I am particularly concerned that such a rigid requirement will discourage the settlement of litigation because, under our statute, a tortfeasor who settles and executes a release is barred from contribution from another tortfeasor whose liability is not extinguished by the release. (Ill. Rev. Stat. 1981, ch. 70, par. 302(e).) Unless all claims of a plaintiff are extinguished against all the joint tortfeasors or against all possible joint tortfeasors, a defendant will be reluctant to settle, knowing that he surrenders a possible right to contribution against some known or unknown unreleased tortfeasor. Also, an attorney representing a defendant could possibly be subjecting himself to a claim for malpractice if he recommended that his client settle with a claimant, thereby surrendering a possible right to contribution. See *Harris v. Rosen* (1961), 28 Misc. 2d 968, 215 N.Y.S.2d 992.

For the reasons stated, I must respectfully dissent.

JUSTICE UNDERWOOD joins in this dissent.