SANDRA K. BRISTOW *et al.*, Plaintiffs-Appellees, v. GRIFFITTS CON-
STRUCTION COMPANY, Defendant-Appellant.

Fourth District    No. 4—85—0293

Opinion filed January 22, 1986.—Rehearing denied February 13, 1986.

MORTHLAND, J., dissenting.

R. Mark Mifflin, of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., of Springfield, for appellant.

Howard W. Feldman and Robert Weiner, both of Springfield, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The plaintiffs, Sandra and Ronald Bristow and Grace and Wilbur Landers, brought a negligence action against James Pearce and his employer, Griffitts Construction Company. The complaint alleged Pearce's negligence caused a trailer, which he was pulling with a pickup truck, to break loose and collide with a vehicle driven by Edward Petrosky. Grace Landers and Sandra Bristow were injured when Petrosky's vehicle collided with theirs. The plaintiffs sought damages for personal injuries and loss of consortium. They sought recovery from Griffitts Construction based solely on the negligence of Pearce through the doctrine of *respondeat superior*. On August 13, 1984, the plaintiffs executed a covenant not to sue Pearce in exchange for $20,000. Griffitts Construction moved for summary judgment, contending the covenant not to sue had discharged its liability. The trial court denied the defendant's motion but certified the following question for appeal under Supreme Court Rule 308 (87 Ill. 2d R. 308): Whether, after enactment of "An Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*), a covenant not to sue in favor of an employee extinguishes the plaintiffs' right to seek recovery from the employer whose liability is solely derivative? We granted the defendant's leave to appeal.

In *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, 216 N.E.2d 811, the supreme court adopted the rule that execution of a covenant not to sue an employee extinguishes any claim against the employer based on the doctrine of *respondeat superior*. The court stated that the rationale for the rule rested either upon the theory that such a result would avoid circuity of action or that exoneration of the servant removes the foundation upon which to impute negligence to the master. (34 Ill. 2d 558, 563, 216 N.E.2d 811, 814.) In *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259, the court held a covenant not to sue an employee did not bar an action against the employer for vicarious liability where the instrument contained an express reservation of the covenantor's right to proceed against the employer. In *Edgar County*, then, the employer remained liable despite the possible circuity of action and the fact that

the employer's liability rested upon the employee's negligence.

We believe the real rationale underlying *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, 216 N.E.2d 811, is revealed in the following portion of the court's opinion:

> "In the case at bar the trial court recognized that if the defendants would have to respond in damages, they could sue their alleged employee, the covenantee, for the amount they had to pay. The employee would then have to respond in the very damages which the covenant was supposed to guard against." (34 Ill. 2d 558, 565, 216 N.E.2d 811, 815.)

Unless the covenant not to sue released the employer from liability, the employee would remain liable for indemnification and would derive no benefit from the covenant. In *Edgar County*, the employee expressly agreed to this result. In the present case, the covenant did not contain a reservation of rights against the employer.

■ The plaintiffs assert section 2(c) of the Act abrogated the rule of *Holcomb*. Section 2(c) provides:

> "When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Ill. Rev. Stat. 1983, ch. 70, par. 302(c).)

Statutes in derogation of the common law are strictly construed in favor of persons sought to be subjected to their operation. (*In re W.W.* (1983), 97 Ill. 2d 53, 454 N.E.2d 207.) The common law is not to be deemed abrogated by statute unless it clearly appears that was the legislative intent. *Lites v. Jackson* (1979), 70 Ill. App. 3d 374, 387 N.E.2d 1118.

The plaintiffs contend the covenant at issue falls within the plain language of section 2(c). In determining the legislative intent, courts should first consider the statutory language. (*People v. Boykin* (1983), 94 Ill. 2d 138, 141, 445 N.E.2d 1174, 1175.) Statutory terms will be given their plain and ordinary meaning unless to do so would defeat the legislative intent. *Pioneer Processing, Inc. v. Environmental Protection Agency* (1982), 111 Ill. App. 3d 414, 419, 444 N.E.2d 211, 214.

The resolution of this case depends upon the meaning of the word "tortfeasors" as used in section 2(c). The plaintiffs maintain the word is synonymous with the phrase "one or more persons liable in tort

arising out of the same injury." A tortfeasor has also been defined as a "wrong-doer; one who commits or is guilty of a tort." (Black's Law Dictionary 1335 (5th ed. 1979).) Under the doctrine of vicarious liability, an employer is held liable to a third party even when the employer is free from all fault. The doctrine is justified as a deliberate allocation of risk. The employer, having engaged in a business and seeking to profit from it, is better able to foresee harm caused by the negligence of his employees and to insure against it than the innocent third party. (Prosser & Keeton, Torts sec. 69, at 499-501 (5th ed. 1984).) Thus, the employer is held liable as a matter of policy, but he is not a wrongdoer. The liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a consolidated or unified one. (*Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 124, 382 N.E.2d 1217, 1221.) The master, therefore, would not be "any of the other tortfeasors."

Our act is based upon the Uniform Contribution Among Tortfeasors Act (see 12 Uniform Laws Annotated 57 through 107 (1975)). (*Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 199, 461 N.E.2d 361, 363.) We note that courts from other jurisdictions construing the Uniform Act have reached contrary conclusions on the issue before us. (Compare *Alaska Airlines, Inc. v. Sweat* (Alaska 1977), 568 P.2d 916, with *Craven v. Lawson* (Tenn. 1976), 534 S.W.2d 653.) In *Alaska Airlines*, the court held the plain language of the Uniform Act included situations involving vicarious liability. The court held a party who is vicariously liable is "one liable in tort for the same injury" even if he is not technically a "tortfeasor." (*Alaska Airlines, Inc. v. Sweat* (Alaska 1977), 568 P.2d 916, 929.) The covenant in *Alaska Airlines* expressly stated the settlement did not include a release of the vicariously liable party. In *Craven*, the court reasoned that the Uniform Act did not purport to intrude where a right to indemnity, not contribution, existed.

The defendant argues our act likewise was not intended to apply at all to situations involving indemnity. The defendant asserts the Act as a whole demonstrates the legislature's concern with contribution, not indemnity. A statute should be evaluated as a whole, and each provision should be construed in connection with every other section and in light of the statute's general purposes. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300.) In passing the Act, the legislature intended to codify the supreme court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, which removed the common law bar against contribution between joint tortfeasors. (*Doyle v. Rhodes*

(1984), 101 Ill. 2d 1, 461 N.E.2d 382.) The Act envisions the sharing of liability between two culpable defendants. (101 Ill. 2d 1, 17, 461 N.E.2d 382, 390.) It focuses on the culpability of the parties rather than the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss. 101 Ill. 2d 1, 14, 461 N.E.2d 382, 390.

The supreme court specifically addressed section 2(c) in *Alsup*. The court held tortfeasors, other than the one or ones who bargained for the release, must be specifically identified in the release in order for it to discharge their liability. The court noted one purpose of the Act was to abrogate the common law rule that release of one joint tortfeasor released all. The court concluded this purpose would be thwarted by the unintended release of strangers to the release contract. The court also stated:

> "Some may question our holding that a release must specifically identify the other tortfeasors in order to discharge their liability, believing that the tortfeasor taking the release will remain liable to the other tortfeasors for contribution. That belief would be unfounded. Our contribution statute, as well as the Uniform Act, provides that a tortfeasor who settles in good faith with a claimant pursuant to paragraph (c) of our statute is discharged from all liability for any contribution to any other tortfeasor." (*Doyle v. Rhodes* (1984), 101 Ill. 2d 196, 202, 461 N.E.2d 361, 364.)

Thus, the court clearly considered the benefit which the party receiving the release would obtain.

The plaintiffs argue the Act abolished all actions for implied indemnity. The plaintiffs contend the legislature intended to have the Act apply to all situations where more than one is held responsible for a tortious act and to have the right of contribution replace the right to indemnity. If so, then the rationale of *Holcomb* is no longer valid.

■ The supreme court has recently raised the issue of whether implied indemnity exists in view of the Act but as yet, has declined to resolve it. (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 475 N.E.2d 867; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946; *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.) The court, however, has noted that contribution and indemnification are distinct theories of recovery. (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349-50, 459 N.E.2d 935, 938.) "Indemnity *** is a common law doctrine providing for the complete shifting of liability on a showing that there was a pre-tort relationship between the guilty parties and a qualita-

tive distinction between their conduct." (99 Ill. 2d 344, 349, 459 N.E.2d 935, 938.) The master-servant relationship is one of the classic pretort relationships which has given rise to a duty to indemnify. (*Van Slambrouck v. Economy Baler Co.* (1985), 105 Ill. 2d 462, 469-70, 475 N.E.2d 867, 870-71.) An employer may seek to be indemnified by his employee for the reason that the employee owes his employer the duty of exercising reasonable care in the performance of his duties. (*Stawasz v. Aetna Insurance Co.* (1968), 99 Ill. App. 2d 131, 240 N.E.2d 702.) Indemnity has the effect of shifting responsibility from the shoulders of one person to another. (Prosser & Keeton, Torts sec. 51, at 344 (5th ed. 1984).) The doctrine is justified on the principle that every individual is responsible for the consequences of his own negligence. *Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola* (1892), 134 N.Y. 461, 31 N.E. 987.

■ "Contribution in Illinois is a statutory remedy which involves a sharing of payment of damage awards and is available to all parties who are 'subject to liability in tort arising out of the same injury *** or the same wrongful death' (Ill. Rev. Stat. 1979, ch. 70, par. 302(a))." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935, 938.) "An action for contribution shifts only part of the loss depending on the comparative responsibility of the parties ***." (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 17, 461 N.E.2d 382, 390.) Thus, "no party is liable to make contribution beyond his *pro rata* share of the common liability as measured by the extent to which his acts or omissions, whatever their nature, proximately caused the injury ***." (*Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 349, 459 N.E.2d 935, 938.) Contribution, like indemnity, "is founded on the fundamental principle that each of the parties should be held accountable for the consequences of his own fault." *Batteast v. St. Bernard's Hospital* (1985), 134 Ill. App. 3d 843, 853, 480 N.E.2d 1304, 1311.

Appellate decisions have reached conflicting conclusions regarding the effect of the Act on indemnity. In *Van Jacobs v. Parikh* (1981), 97 Ill. App. 3d 610, 422 N.E.2d 979, the court noted the traditional distinctions between indemnity and contribution had been blurred in an effort to lessen the effectiveness of the no-contribution rule. The court held the Act had not abolished indemnity but instead permitted courts to place indemnity back on its theoretical foundation. *Van Jacobs* has been interpreted as holding that the Act had no effect on any action for indemnity. (*Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 610, 479 N.E.2d 333, 335-36.) In *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792, the court held the Act

effectively enervated the usefulness of active-passive indemnity in ordinary negligence cases. Due to the unique policy behind the doctrine of strict liability, the court found "upstream" indemnity in strict liability actions to have continued vitality.

The court in *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653, noted the Act was based on the Uniform Act and a New York statute, both of which had a provision preserving the right of indemnity. The court stated the failure of the legislature to include such a provision was not conclusive but strongly suggested an intent to eliminate the judicially created doctrine of active-passive indemnity. The court concluded the Act extinguished causes of action for implied indemnity with the possible exceptions of "cases involving some pretort relationship between the parties which gives rise to a duty to indemnify, *e.g.*, in cases involving vicarious liability (lessor-lessee; employer-employee; owner and lessee; master and servant)"; or cases involving " 'up-stream' claims in a strict liability action." (127 Ill. App. 3d 767, 774, 469 N.E.2d 653, 658.

In *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383, the court overruled *Lowe* and held the Act extinguished all actions from implied indemnity. The court reasoned that by shifting the entire burden to the indemnitor, the doctrine of indemnity creates a scheme under which the tortfeasor's culpability bears no relation to his burden of the loss even in cases involving vicarious liability or "upstream" indemnity. The court found the effect of this scheme nullified the equitable equation of the degree of responsibility for the tortious act and undermined the basis upon which the right of contribution, as well as the principles of comparative negligence and comparative fault, rest. (131 Ill. App. 3d 666, 676, 475 N.E.2d 383, 390.) In *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 479 N.E.2d 333, however, a different panel from the same district found the logic of *Morizzo* compelling and held the Act altered the right to indemnity only to the extent it was based upon the theory of active-passive negligence. The court found indemnity was still a viable cause of action where a pretort relationship, such as master and servant, employer and employee, lessor and lessee or owner and lessee, existed. The court further concluded the Act had not extinguished indemnity for "upstream" claims and strict liability actions. 133 Ill. App. 3d 607, 610-11, 479 N.E.2d 333, 336.

■ We agree with the *Morizzo* and *Allison* decisions that while the Act extinguished actions for implied indemnity under the active-passive negligence theory, the doctrine of implied indemnity remains effective in cases where one party's liability is solely derivative. In

*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, the court, commenting on the active-passive negligence theory, noted courts have expanded the concept of indemnity "to the ever increasing situations where there is some fault attributable to both parties ***" in an effort to mitigate the harsh and unjust application of the no-contribution rule. (70 Ill. 2d 1, 12, 374 N.E.2d 437, 441.) The Act eliminated any reason for recognizing a cause of action for indemnity in such situations. Indeed, continued application of the doctrine, with its all or nothing approach, to such situations, even if the indemnitee is only passively negligent, would subvert the purpose of the Act which is to require the *pro rata* sharing of liability based upon the fault attributable to each party.

As previously noted, the doctrine of vicarious liability is not based upon fault but upon a policy of proper allocation of the risk. As between the master and the innocent third party, the doctrine requires the master to bear any loss for his servant's negligence. The master, however, is not at fault; rather, the servant's negligence is imputed to the master. As between the master and the servant, it is the servant who should bear the entire loss. In the case of vicarious liability, therefore, there is a sound basis for indemnity but not for any apportionment of damages between the master and servant. Prosser & Keeton, Torts sec. 52, at 346 (5th ed. 1984).

The defendant asserts application of the Act to causes of action involving vicarious liability will lead to collusion between a plaintiff, who seeks to reach into an employer's "deep pocket," and the employee, who seeks to limit his liability. The plaintiffs correctly note the Act requires a settlement to be made in good faith before a tortfeasor is discharged from all liability for contribution. We fail to see how the plaintiffs could in good faith settle with the employee, who is allegedly the sole party at fault, and still seek additional damages from the employer. If an additional recovery were necessary, then the settlement could not possibly reflect the employee's *pro rata* share of culpability. Applying the Act in situations where one party's liability is derivative would be repugnant to the central purpose of the Act.

■ Section 2(c) was designed to encourage settlements. Because we find an action for indemnity remains viable in cases involving vicarious liability, the employee in this case would gain nothing in return for his $20,000 and relinquishing his right to defend unless the covenant not to sue also extinguished the employer's vicarious liability. We, therefore, find a party whose liability is solely derivative is not "any of the other tortfeasors" with the meaning of section 2(c). Under *Holcomb*, the covenant not to sue the employee discharged the

employer's vicarious liability.

For these reasons, we reverse the order of the trial court denying the defendant's motion for summary judgment.

Reversed.

TRAPP, J., concurs.

JUSTICE MORTHLAND, dissenting:

The majority point to *Holcomb v. Flavin* (1966), 34 Ill. 2d 558, 216 N.E.2d 811, a case which preceded this statute, in support of the position that a covenant not to sue given an employee enures to the benefit of the employer and thus bars an action against him based upon the tortious conduct of the employee. They point out that, by this ruling, circuity of action is avoided. No action then exists by the employer against the employee for indemnification. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259, however, stands for the proposition that an action can be maintained against an employer after a covenant is given to the employee when the covenant expressly reserves a right to proceed against the employer. I suggest that the proper application of *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, to any covenant or release that does not specifically release an employer leaves us in the *Edgar County* situation. The action is in essence reserved against the employer.

The majority states that the employer is not at fault but becomes liable only because the employee's negligence is imputed to him. Consequently, the employee should bear the entire loss. I suggest that the above proposition may not be as crystal clear as it purports to be. Consider the following: a factual setting where the employer provides defective equipment for the employee to use, resulting in liability on the part of the employee, *i.e.*, a truck with defective brakes; the doctrine under *Palmer v. Miller* (1942), 380 Ill. 256, 43 N.E.2d 973, where the employer, while in a vehicle owned by him but driven by the employee, has a duty to control the operation of the vehicle; and the doctrine of negligent entrustment. The ingenuity of lawyers is limitless in this regard, and the holding of the majority would seem to release the employer from vicarious liability but not from these other potential liabilities.

I believe that the enactment of "an Act in relation to contribution among joint tortfeasors" (Act) (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*) abrogates the need for or use of implied indemnity in any tort

cases. *Holmes v. Sahara Coal Co.* (1985), 131 Ill. App. 3d 666, 475 N.E.2d 1383; special concurring opinion of Justice Downing, *Morizzo v. Laverdure* (1984), 127 Ill. App. 3d 767, 469 N.E.2d 653; *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289.

Under the Act, if an employee entered into a good faith settlement with a third party, his employer would have no action against him. The employer could then set off against any judgment rendered against him the amount paid to a third party by his employee. The scheme of the Act, that one be responsible for his own fault, would be served.

Moreover, the Act, along with decisions in cases such as *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, and *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382, evidence a clear intent by both the legislature and the judiciary that liability be shared by culpable defendants. Clearly, contribution, and not indemnity, is favored. The majority opinion here, however, moves in the opposite direction. The majority relies heavily on the opinion in *Holcomb*, which was handed down in 1966, years before *Skinner* was decided and the Act was passed.

The majority states that our Act is based upon the Uniform Contribution Among Tortfeasors Act and a New York statute, both of which included a provision preserving the right of indemnity. No such provision is included in our Act. Arguably, if the General Assembly had wished for indemnity to continue, it would have said so in the act as passed. It did not. Some justification can be found, therefore, for the belief that a strong public policy favoring a right of contribution, and not indemnity, exists in Illinois now.

Finally, the majority states that section 2(c) was designed to encourage settlements. It appears that the majority decision, however, leads to the opposite result. As the release of an employee by covenant not to sue would therefore discharge the employer (and vice versa), an adversarial position is promoted. Neither defendant would want to settle because each would know that such a settlement would discharge the other. Thus, each would try to "wait out" the other, hoping the other would settle first. As a result, the purpose of section 2(c) would be eviscerated. The only party hurt would be the plaintiff, attempting to obtain compensation for his injuries.

I would affirm the judgment of the trial court denying defendant's motion for summary judgment.