**Bruce P. GOLDEN, Appellant,**

v.

**David BARENBORG and Salomon Brothers, Inc., Appellees.**

No. 91 C 7359.

United States District Court, N.D. Illinois, E.D. ·

April 25, 1994.

Bruce P. Golden, pro se.

John I. Grossbart, Jill Anne Thompson, Sonnenschein, Nath & Rosenthal, Chicago, IL, for appellees.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff-appellant Bruce P. Golden ("Golden") filed a complaint against defendants-appellees David Barenborg ("Barenborg") and Salomon Brothers, Inc. ("Salomon Brothers") (collectively, "appellees"), alleging fraud (Count I), negligent misrepresentation (Count II), consumer fraud pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12 (formerly ILL.REV.STAT.1991, ch. 121½, ¶¶ 261–272) (Count III), and breach of contract (Count IV) against both appellees, and breach of warranty (Count V) against Barenborg. Appellees filed a joint motion to dismiss under Federal Rule of Civil Procedure 12(b). The Magistrate Judge hearing the case treated the motion as one for summary judgment, finding that the parties had gone beyond the pleadings in support of their arguments. The Magistrate Judge granted appellees' motion, finding that Golden's complaint was barred by *res judicata*. Golden appealed to this court, which has jurisdiction to hear the appeal under Rule 73(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(c)(4). For the reasons set forth below, the court affirms.

### I. BACKGROUND

Barenborg was employed by Salomon Brothers. When Barenborg was transferred by Salomon Brothers from Illinois to New York, Salomon Brothers engaged Coldwell Banker to sell Barenborg's home for Barenborg. Pursuant to an ongoing agreement, Coldwell Banker Relocation Management Services, Inc., would purchase residences of relocated Salomon Brothers employees at fair market value (subject to additional payment if a residence was resold at a higher price). Coldwell Banker Real Estate, Inc., then would remarket the residences. Under this agreement, Salomon Brothers would pay Coldwell Banker Relocation Management Service fees on a per-relocation basis and would reimburse it for losses resulting from

any resale. (Coldwell Banker's relocation management and real estate divisions will be referred to as Coldwell Banker.) Coldwell Banker purchased Barenborg's home for $330,000 by warranty deed, but left blank the portion of the deed naming the grantee. The contract of sale between Barenborg and Coldwell Banker provided that legal title would pass directly from Barenborg to the ultimate buyer. Title was to remain with Barenborg until the home was resold, and neither passed through nor was recorded by Coldwell Banker.

On April 1, 1991, Golden purchased Barenborg's single-family home from Coldwell Banker's real estate division for $280,000. Soon after buying the home, Golden discovered that the home had several latent defects in structure and condition. In June 1991, Golden sued Coldwell Banker, alleging that Coldwell Banker had committed common law fraud (Count I), negligent misrepresentation (Count II), and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III).

Golden claimed that Coldwell Banker had represented that Barenborg was employed by AT & T and was not reachable; that plans and specifications for prior remodeling work on the home were not available; and that Coldwell Banker had no inspection reports or other documents that it had not already provided to Golden. Golden alleged that these statements were false when made, and that Coldwell Banker made them knowingly to induce Golden to buy the home. Golden also alleged that Coldwell Banker knowingly failed to disclose that the home had no concrete floor in the basement and no concrete foundation; that the home had extensive termite damage; that Coldwell Banker had commissioned an inspection when it bought the home from appellees, and that the inspection disclosed most of the defects as well as several City of Chicago building code violations; that the inspection report strongly recommended that a structural analysis of the foundation be conducted; and that the inspection report noted roof defects and faulty plumbing and drainage systems. Golden claimed that new flooring, exterior siding, and interior walls hid the defects from

view, and therefore that he could not have learned of the home's true condition through reasonable diligence. Golden claimed that he relied on Coldwell Banker's misstatements in his decision to buy the home, and that he would not have bought it had its true condition been disclosed to him.

On the eve of trial, Coldwell Banker and Golden settled that case for $60,000. In exchange, Golden executed a release, agreeing to dismiss his complaint with prejudice and to release Coldwell Banker from any future liability that might arise from the marketing and sale of Barenborg's home. The parties informed the court that they were settling the case, and the court issued an order ending the trial. Apparently, however, neither Golden nor Coldwell Banker ever filed with the court the stipulated dismissal with prejudice.

Approximately one month after Golden and Coldwell Banker settled, Golden sued appellees Barenborg and Salomon Brothers. Golden alleged that appellees, through Coldwell Banker, had committed common law fraud (Count I), negligent misrepresentation (Count II), and a violation of the Consumer Fraud Act (Count III). Golden claimed that Coldwell Banker, acting as an agent of appellees, knowingly failed to disclose the information about the physical condition of the home, which it was under an affirmative duty to disclose. Golden alleged that the basement had no concrete floor; that the foundation had extensive termite damage; that the walls and ceilings leaked; and that the plumbing and drainage systems were defective. Golden also alleged that before buying the home, he requested certain information about Barenborg and the remodeling work that had been done on the home, but that Coldwell Banker knowingly made false statements about its knowledge of this information. Golden claimed that Coldwell Banker had commissioned the inspection report, which disclosed some, if not all, of the home's defects to Coldwell Banker and appellees. Golden alleged that appellees were aware of these defects, but deliberately failed to disclose them.

Golden also alleged that Coldwell Banker breached an addendum to its real estate contract with Golden (Count IV). The addendum provided that if Golden notified Coldwell Banker of unacceptable defects within 14 days after signing the contract, Coldwell Banker would either repurchase the home or reimburse Golden for any resulting repair costs. Golden claimed that within 14 days he notified Coldwell Banker in writing of certain defects, but that Coldwell Banker did not repurchase the home or reimburse him for repair costs, as required by the addendum. Golden claims that Coldwell Banker thus breached the contract, and that appellees are vicariously liable for the breach. The crux of these four counts is that Coldwell Banker acted as an agent of appellees, and that appellees therefore are vicariously liable for the acts of Coldwell Banker.

Golden added a fifth claim against only Barenborg for breach of warranty (Count V). Golden alleged that pursuant to the agreement between Salomon Brothers and Coldwell Banker to remarket Barenborg's home, Barenborg warranted that the home was free of damage from or infestation of termites. Golden claims that Barenborg is liable for the breach to Golden, a third party beneficiary of the warranty, because Barenborg knew that the intended and direct beneficiary of the agreement was the ultimate purchaser of the home.

Appellees filed a joint motion to dismiss Golden's complaint pursuant to Rule 12(b)(6). The Magistrate Judge granted appellees' motion, which she treated as one for summary judgment. Golden filed a motion for reconsideration of the order and a motion to vacate the order, both of which the Magistrate Judge denied. Golden then appealed to this court.

## II. DISCUSSION

### A. Summary Judgment Standard

This court, acting as an appellate court, reviews *de novo* the Magistrate Judge's grant of appellees' motion for summary judgment.[1] Summary judgment in this

1. The parties in this case consented to an appeal to this court from the Magistrate Judge's ruling,

case is proper only if appellees, as movants, have established that no genuine issue as to any material fact exists, and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). In determining whether any genuine issues of material fact exist, the court must draw all reasonable inferences in the light most favorable to Golden, as non-movant in this case. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). Golden cannot rest on the allegations in the pleadings, however, but must set forth specific facts supporting his claim and showing that a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 256, 106 S.Ct. 2505, 2510, 2514, 91 L.Ed.2d 202 (1986).

■ The substantive law governing the lawsuit identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Or, as the Seventh Circuit frames it: "When it is plain that a trial could have but one outcome, summary judgment is properly granted to spare the parties and the court the time, the bother, the expense, the tedium, the pain, and the uncertainties of trial." *Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988).

### B. Basis of Magistrate Judge's Memorandum Opinion and Order

The Magistrate Judge granted summary judgment on all counts based on her finding that *res judicata* barred Golden's lawsuit against appellees. It appears from the record, however, that neither Coldwell Banker nor Golden filed with the court the stipulation of dismissal with prejudice, and the court in the first lawsuit ended the trial by order without specifying whether the case was dismissed with or without prejudice.

■ The Seventh Circuit has ruled that a stipulation of dismissal with prejudice must be filed to take effect. *McCall–Bey v. Franzen,* 777 F.2d 1178, 1185 (7th Cir.1985). If a court issues an order of dismissal before such a stipulation is filed, then that order is what ends the case, despite the parties' intentions to the contrary. *Id.* at 1184–85. Federal Rule of Civil Procedure 41(a)(2) governs dismissal by order of court, and clearly provides that a dismissal is without prejudice unless otherwise specified. The court's order ending the first lawsuit did not state that the dismissal was with prejudice. It seems, therefore, that the first lawsuit was dismissed without prejudice, and so cannot operate as a final adjudication on the merits. If this is so, then that dismissal has no *res judicata* effect. *See Goold Elecs. Corp. v. Galaxy Elecs., Inc.,* 1993 WL 427727, at *1–2, 1993 U.S. Dist. LEXIS 15009, at *5–*6 (N.D.Ill. Oct. 15, 1993).

■ However, this court need not reach the issue of *res judicata.* An appellate court should sustain a lower court's judgment on any ground that finds support in the record and the law, even if the lower court has not reached or has ruled erroneously on that ground. *See Parmelee Transp. Co. v. Keeshin,* 292 F.2d 794, 797 (7th Cir.1961); *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957). This court finds that summary judgment should be granted to appellees based on adequate and independent grounds other than *res judicata.*

### C. Counts I through IV

#### 1. Legal Basis of Claims

■ Appellees argue on appeal that Counts I through IV of Golden's complaint sought to impose liability on them based on the acts of their alleged agent, Coldwell Banker. The Magistrate Judge found that

---

rather than to the Court of Appeals for the Seventh Circuit, pursuant to 28 U.S.C. § 636(c)(4). Such appeals are conducted "in the same manner as ... an appeal from a judgment of the district court to the court of appeals." 28 U.S.C. § 636(c)(4). The Seventh Circuit reviews a dis-

trict court's summary judgment decision *de novo. Darnell v. Target Stores,* 16 F.3d 174, 176 (7th Cir.1994). Accordingly, this court, too, will apply the *de novo* standard in reviewing the Magistrate Judge's decision.

this was so. Golden, on the other hand, contends that he raised allegations of independent wrongdoing by appellees. Count I alleged that Coldwell Banker committed fraud "with the knowing assistance of Barenborg and Salomon Brothers." Plaintiff's Complaint, ¶ 13. Count I also alleged that appellees "knew ... material facts" that Coldwell Banker was under a duty to disclose to Golden, Plaintiff's Complaint, ¶ 15; and that appellees "act[ed] in concert with" Coldwell Banker, Plaintiff's Complaint, ¶ 17. Counts II through IV reasserted these same allegations. Golden offered no further facts or allegations to show that either Barenborg or Solomon Brothers acted unlawfully independently of Coldwell Banker. Therefore, Golden has not established a genuine issue of material fact concerning whether or not appellees were charged only with vicarious liability.

The court agrees with appellees and the Magistrate Judge that Counts I through IV are based only on vicarious liability.

### 2. *Existence of Agency Relationship*

Golden argued to the Magistrate Judge and asserts in his briefs to this court that a principal-agent relationship existed between appellees and Coldwell Banker. Appellees assert that no agency relationship existed between them and Coldwell Banker but, for purposes of the *res judicata* argument, assume that such a relationship exists.

■ In reaching her conclusion that *res judicata* barred Golden's lawsuit against appellees, the Magistrate Judge assumed for purposes of argument that a principal-agent relationship existed between appellees and Coldwell Banker. But the existence of an agency relationship is not something to be presumed. It is a question of fact to be decided by the court or jury based on an examination of the situation of the parties, their acts, and other relevant information. *See, e.g., Phipps v. Cohn,* 139 Ill.App.3d 210, 212, 93 Ill.Dec. 761, 763, 487 N.E.2d 428, 430 (5th Dist.1985); *Sherman v. Field Clinic,* 74

Ill.App.3d 21, 25, 29 Ill.Dec. 597, 600–01, 392 N.E.2d 154, 157–58 (1st Dist.1979).

This case, however, is not dependent upon the existence or nonexistence of an agency relationship between appellees and Coldwell Banker. Either possibility (that is, agency relationship or no agency relationship) produces the same outcome—that Golden may not bring this lawsuit against appellees.

#### a. *Agency relationship exists*

Golden argues that Coldwell Banker acted as the agent of appellees. Appellees respond that even if an agency relationship existed between them and Coldwell Banker, the settlement agreement releasing Coldwell Banker from further liability operated as a release of appellees, as principals.

■ The release in the settlement agreement nowhere mentioned appellees by name or stated that the released parties included any principals of Coldwell Banker. *See Golden v. Barenborg,* No. 91 C 7359, at 5–6 1992 WL 162977, at *2 (N.D.Ill. July 6, 1992) (Order of Magistrate Judge Bucklo granting defendants' motion for summary judgment). Therefore, appellees were not explicitly released from liability to Golden by the settlement agreement between Coldwell Banker and Golden. Appellees correctly note, however, that as a general rule, a covenant not to sue the agent releases the principal from liability. *Holcomb v. Flavin,* 34 Ill.2d 558, 565, 216 N.E.2d 811, 815 (1966).

■ Golden counters by raising a creative argument regarding Illinois law on implied indemnity.[2] Golden bases his argument on his belief that Illinois' Joint Tortfeasor Contribution Act ("Contribution Act"), 740 ILCS 100/0.01 to 100/5 (formerly ILL. REV.STAT. 1991, ch. 70, ¶¶ 300–05), abolished the Illinois common law of implied indemnity, under which an agent must indemnify its principal if the principal is sued for the agent's acts under a theory of vicarious liability. According to Illinois law, if the concept of implied indemnity exists, it is unfair to allow a third person to sue a principal after

---

2. Plaintiff raised his argument in the context of his *res judicata* argument that defendants were not privies of Coldwell Banker. While his discussion of implied indemnity was not directly relevant to *res judicata,* it does have some import with respect to whether principals may be liable for agents' acts after the agents are released from liability.

collecting from and releasing the agent, because then the agent would be subject to double liability. *See Bristow v. Griffitts Construction Co.*, 140 Ill.App.3d 191, 198, 94 Ill.Dec. 506, 512, 488 N.E.2d 332, 338 (4th Dist.1986). Golden contends, however, that implied indemnity no longer exists in Illinois, and therefore that a third person may sue an agent's principal even after suing and collecting from the agent.

The Illinois Supreme Court recently addressed Golden's contentions squarely and reached a contrary conclusion. In *American Nat'l Bank & Trust Co. v. Columbus–Cuneo–Cabrini Medical Center*, 154 Ill.2d 347, 181 Ill.Dec. 917, 609 N.E.2d 285 (1992), the Illinois court concluded that the Contribution Act did not abolish actions for common law implied indemnity for quasi-contractual situations (i.e., principal-agent relationships) involving solely vicarious liability. That court noted that the Contribution Act addresses relative culpability of tortfeasors at fault in fact and, as such, is premised on "fault-based considerations". *American Nat'l Bank*, 154 Ill.2d at 353, 354, 181 Ill.Dec. at 921, 609 N.E.2d at 289. In the case of vicarious liability, however, "[o]nly the agent is at fault in fact for the plaintiff's injuries." *American Nat'l Bank*, 154 Ill.2d at 354, 181 Ill.Dec. at 921, 609 N.E.2d at 289. So, the principal "cannot be one of the 'other tortfeasors' to which ... the Contribution Act refers." *Id.* (citing *Bristow*, 140 Ill.App.3d at 198, 94 Ill.Dec. at 511–12, 488 N.E.2d at 337–38). The court then expressly adopted the approach of *Bristow* that "any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability." *American Nat'l Bank*, 154 Ill.2d at 355, 181 Ill.Dec. at 921, 609 N.E.2d at 289. *Accord, Gilbert v. Sycamore Municipal Hospital*, 156 Ill.2d 511, 527–29, 190 Ill.Dec. 758, 766–67, 622 N.E.2d 788, 796–97 (1993) (the same result obtains even if the release expressly exempts the principals).

Thus, according to Illinois law, if Coldwell Banker was the agent of appellees, the settlement between Coldwell Banker and Golden served to extinguish any vicarious liability of appellees. So, if a principal-agent relationship existed between appellees and Coldwell Banker, Counts I through IV cannot be maintained.

### b. *Agency relationship does not exist*

■ Appellees contend that Coldwell Banker was not their agent, and thus that liability for Coldwell Banker's acts cannot be imposed on them. Absent an agency relationship between Coldwell Banker and appellees, there can be no vicarious liability imposed upon appellees; the only basis for imposing vicarious liability would be the agency relationship. *See, e.g., Northrop v. Lopatka*, 242 Ill.App.3d 1, 5, 182 Ill.Dec. 937, 610 N.E.2d 806, 810 (4th Dist.1993); *Anderson v. Boy Scouts of America, Inc.*, 226 Ill.App.3d 440, 442, 168 Ill.Dec. 492, 493–94, 589 N.E.2d 892, 893–94 (1st Dist.1992). Since Counts I through IV all are based on the vicarious liability of appellees for Coldwell Banker's acts, all four counts must fail as a matter of law if no agency relationship exists.

Accordingly, regardless of whether or not an agency relationship existed between appellees and Coldwell Banker, summary judgment is proper. There can be but one outcome—that appellees cannot be held liable to Golden for Coldwell Banker's acts.

### D. *Count V*

In count V of his amended complaint, Golden claimed that he was entitled to damages as the intended third party beneficiary of a warranty in the contract of sale between Barenborg and Coldwell Banker that as of the date Coldwell Banker took possession of Barenborg's residence, the residence would be free of any damage from or infestation by termites. Appendix to Brief and Argument of Plaintiff–Appellant, at 13. Golden alleged that as of the possession date and through April 1, 1991, the residence suffered from massive termite damage. Golden alleged that Barenborg knew that the intended and direct beneficiary of the agreement was the ultimate purchaser of the residence. *Id.* at 14. Golden claimed that his damages were a direct result of Barenborg's material breach of warranty. *Id.*

In their motion for summary judgment, appellees argued that Golden was not a di-

rect or an intended beneficiary of the contract of sale between Barenborg and Coldwell Banker, and that Golden could not establish the existence of any genuine issue of material fact to the contrary. Joint Motion of Defendants to Dismiss Complaint, ¶ 12. Appellees pointed out that the agreement between Barenborg and Coldwell Banker expressly provided that it was not intended to create any rights in Coldwell Banker's nominee or in any person not a party to the agreement. Joint Memorandum of Defendants in Support of Motion to Dismiss Complaint, at 14. Appellees also contended that Golden failed to allege that the contracting parties ever wavered from their intentions as expressed in the agreement. *Id.*

Golden countered that whether a third-party beneficiary status was conferred upon Golden was a question of fact, and thus not appropriate for summary judgment. Appendix to Brief and Argument of Plaintiff–Appellant, at 104 (from Plaintiff's Response to Defendants' Joint Motion to Dismiss Complaint). Golden also argued that Barenborg's execution of a Seller's Real Property Information Statement ("seller's statement") one week after he and Coldwell Banker entered into the contract of sale for Barenborg's home made obvious the contracting parties' intent that third parties rely on the contract of sale. *Id.* at 106. Golden noted that the seller's statement contained many references to the contract of sale. He pointed out that the seller's statement stated that the information in it was true and correct, that no material problems existed with respect to Barenborg's property, and that Coldwell Banker was authorized to furnish the information to any prospective purchaser. *Id.*

Golden also argued that the seller's statement itself was intended to create rights in favor of third-party purchasers. He thus contended that because his complaint contained numerous references to the falsity of information furnished in the seller's statement, Count V stated a cause of action against Barenborg independent of the contract of sale. *Id.*

On appeal, Golden raises the issue of the seller's statement for yet another purpose— in response to the Magistrate Judge's finding that Golden had not shown that the intent of the parties to the contract of sale had ever changed, presumably with respect to whether the contract of sale was meant to confer rights upon the subsequent buyer of Barenborg's home. Brief and Argument of Plaintiff–Appellant, at 25. Golden claims that the Magistrate Judge applied the wrong standard in evaluating appellees' motion for summary judgment. Golden correctly notes that in ruling on Rule 56 motions, all allegations must be viewed in the light most favorable to the non-movant—Golden in this case—and all reasonable inferences must be drawn in his favor. Brief and Argument of Plaintiff–Appellant, at 24. Golden contends that rather than take his allegations in the light most favorable to him, the Magistrate Judge took appellees' allegations in the light most favorable to them in reaching the erroneous conclusion that Golden could not show that the intent of the parties had changed. Golden argues that he brought the question of changed intent into issue by raising the seller's statement, which Barenborg executed one week after he executed the contract of sale. *Id.* at 25.

 Illinois law unequivocally holds that if a contract is entered into for the direct benefit of a third person not a party to the contract, then the third person may sue for the breach of the contract. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498, 501 (1931). However, it is equally clear that if the benefit to the third person is merely an incidental one arising from the contract, the third person cannot sue for the breach of the contract. *Id.* "This test is to be determined within the language of the contract." *Securities Fund Services, Inc. v. American Nat'l Bank & Trust Co.*, 542 F.Supp. 323, 329 (N.D.Ill.1982) (citing *Carson Pirie Scott*, 346 Ill. at 257–58, 178 N.E. at 501). The contracting parties must manifest in the contract an intention to confer a benefit upon the third party. *Altevogt v. Brinkoetter*, 85 Ill.2d 44, 54, 51 Ill.Dec. 674, 679, 421 N.E.2d 182, 187 (1981). An allegation that a contracting party knew that a third party ultimately would benefit from the contract is not sufficient to establish that the third party is a direct beneficiary of the

contract. *Altevogt,* 85 Ill.2d at 56, 51 Ill.Dec. at 680, 421 N.E.2d at 188. Such knowledge "has never been enough under Illinois law" to make the third person a direct rather than indirect beneficiary. *Slate Printing Co. v. Metro Envelope Co.,* 532 F.Supp. 431, 433 (N.D.Ill.1982). In addition, there is a presumption against third party beneficiaries: "Inasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration." *Slate Printing,* 532 F.Supp. at 433 (citing *Midwest Concrete Products Co. v. LaSalle Nat'l Bank,* 94 Ill. App.3d 394, 396, 49 Ill.Dec. 968, 970, 418 N.E.2d 988, 990 (1st Dist.1981)).

 Golden cannot be a third-party beneficiary to the contract between Barenborg and Coldwell Banker, and thus cannot benefit from Barenborg's warranty to Coldwell Banker. The express wording of the contract of sale to extinguish rights in any person not a party to the contract leaves no doubt that Barenborg and Coldwell Banker did not intend to make Golden or any other potential buyer a third-party beneficiary of the contract. Golden's allegations that Barenborg knew that the intended beneficiary of the warranty was the ultimate purchaser of the residence are insufficient to confer third-party beneficiary status on Golden. The contract makes clear that Barenborg and Coldwell Banker only intended to benefit themselves by executing the warranty.

Golden's allegations with respect to the seller's statement do not change this analysis. The seller's statement was an entirely separate document from the contract of sale. Count V was based not on the seller's statement, but on the warranty in the contract of sale. Any misrepresentations that may have occurred in the context of the seller's statement have no bearing on this case, since they were not made a basis of any count in Golden's complaint. Again, Illinois law is clear that it is the intent of the parties as manifested in the contract, and not in other documents, that dictates whether a third person was meant to be a direct beneficiary of that contract.

In ruling on a motion for summary judgment, the court is required to draw *reasonable* inferences in Golden's favor. Golden is asking the court to draw unreasonable inferences in his favor—inferences that are contrary to the law of Illinois. Accordingly, the court finds that the Magistrate Judge correctly granted appellees' motion for summary judgment on Count V of Golden's complaint.

## CONCLUSION

For the reasons set forth above, the decision of the Magistrate Judge is affirmed.